***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission, and this is the Court of proper jurisdiction for this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On the alleged date of injury, the parties were subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act.
4. At all relevant times, an employment relationship existed between the parties.
5. AIG Claim Services, Inc., was the compensation carrier on the risk.
6. All of plaintiff's medical records were submitted as Stipulated Exhibit No. 4, which exhibit was supplemented by records submitted to the Commission by letter from plaintiff's counsel dated February 21, 2005. 7. All Industrial Commission forms were submitted as Stipulated Exhibit No. 3.
8. The parties' respective responses to discovery were submitted as Stipulated Exhibit No. 2.
9. The parties submitted, as part of Stipulated Exhibit No. 3, a duly executed Form 22.
10. Plaintiff's alleged date of injury is on or about September 6, 2002.
 *********** EVIDENTIARY RULINGS
The objections raised by counsel at the depositions taken in this matter are ruled upon in accordance with the law and the opinion in this Opinion and Award.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the age of 43 years, plaintiff started working as a project field tenant coordinator for the defendant-employer, the Richard E. Jacobs Group, on April 8, 2002. Her job duties included physical inspection of the Triangle Town Center mall site while it was under construction, leading up to its grand opening on or about August 14, 2002. Plaintiff's work week typically involved working between forty and sixty hours per week.
2. After the mall's grand opening on or about August 14, 2002, plaintiff continued to perform her job duties as project field tenant coordinator, as many mall tenants' sites were unfinished. On September 4, 2002, plaintiff noticed some stiffness across her back while walking through a corridor area of the mall. Plaintiff continued to finish her work on September 4, 2002, without incident.
3. Plaintiff returned to work on the morning of September 5, 2002, and worked throughout the day without incident. Plaintiff later returned to work, on the evening of September 5, 2002, in order to assist an architect, Ms. Marie-Josee LaPierre, in the measuring of tenant space. In order to measure said space, plaintiff and Ms. LaPierre each had to lift and carry her own construction-grade, A-frame ladder, approximately ten feet in height. Plaintiff carried the ladder without incident, and she did not have any onset of back pain at the time of carrying the ladder. Ms. LaPierre, who was with plaintiff while plaintiff carried the ladder, did not see or hear any expression of pain from plaintiff, nor did plaintiff complain of any pain to Ms. LaPierre. Upon finishing for the evening, plaintiff went home and went to bed.
4. Plaintiff awoke the next morning, Friday, September 6, 2002, with severe low back pain. She was able to come in to work for a meeting with McDonald's executives, but the meeting was interrupted by plaintiff's complaints of unrelenting low back pain requiring immediate medical attention.
5. Plaintiff traveled to her gynecologist's office, where she had a previously scheduled appointment, but they were unable to treat her condition at that time. Plaintiff thereafter called her physician, general practitioner Dennis W. Fera, M.D., with whom she had treated in recent years for back pain, including at least one episode of low back pain. Dr. Fera was able to see plaintiff on September 6, 2002 and provide conservative treatment measures.
6. Plaintiff developed symptoms of increasing pain in her lower extremities over the weekend, and, on Monday, September 9, 2002, she saw a chiropractor, Angela Bayliss, D.C. Dr. Bayliss diagnosed plaintiff with lumbar disc syndrome and provided conservative treatment.
7. Thereafter, on September 11, 2002, plaintiff's symptoms intensified to the point that she went to the Emergency Room at Rex Hospital. An MRI scan of the lumbar spine revealed a right paracentral disc herniation at L3-4 impacting the right L4 nerve root. The MRI scan also revealed a moderate central disc herniation at L5-S1, possibly impacting upon the right S1 nerve root. Plaintiff was written out of work by the Emergency Room personnel and referred to neurosurgeon Robert Lee Allen, M.D., for surgical consultation and to ProActive Therapy for physical therapy.
8. Plaintiff gave a recorded statement to defendant-carrier's adjustor on September 13, 2002. In said statement, plaintiff said that she "really began to feel" back pain the evening of September 4, 2002, when "(her) lower back really hurt." Plaintiff did not mention carrying the ladder in the September 13, 2002 statement. Asked if there was "anything else" that "prompted" her low back pain, plaintiff answered, "No, it's the damnedest thing."
9. Dr. Allen saw plaintiff on September 16, 2002. Plaintiff complained of low back pain with right-sided thigh radiation. Plaintiff admitted during her testimony that she reported to Dr. Allen at this appointment that she had a one to two month history of low back pain which had increased without trauma in the last week. After clinical examination and review of plaintiff's MRI scan, Dr. Allen noted her symptoms may be due to a "small right L3-4 disc." Dr. Allen recommended conservative management, referred plaintiff to physical therapy and wrote her out of work for three weeks' time. Plaintiff subsequently underwent physical therapy at Pro Active Therapy.
10. At the request of the defendant-carrier, plaintiff was asked to present to orthopedist Leonard Nelson, M.D. of Raleigh Orthopedic Group, P.A. Plaintiff first saw Dr. Nelson on October 2, 2002, complaining of right posterior thigh pain and incapacitating mechanical low back pain. Plaintiff indicated that she was in a meeting when she experienced back pain and was unable to get out of her chair. Dr. Nelson agreed that plaintiff was not a surgical candidate, recommended continued conservative treatment modalities and wrote plaintiff out of work.
11. Plaintiff continued to seek medical treatment for her back pain with Dr. Nelson and visited Raleigh Orthopedic Clinic for this condition on October 24, 2002; November 21, 2002; January 20, 2003; April 2, 2003; August 7, 2003; July 26, 2004 and December 20, 2004. During this time, plaintiff continued to receive conservative treatment and also underwent additional physical therapy at Trinity Wellness Center, Inc. At the December 20, 2004 visit, Dr. Nelson declared plaintiff to have reached maximum medical improvement, assigned her a ten percent (10%) permanent partial disability rating of the lumbar spine, released her to return to physical activities as tolerated and asked her to return to his office as needed.
12. There is no mention in any of the records of the aforementioned medical appointments, nor in any other medical records before the undersigned, that plaintiff related a history of having lifted a ladder. In the Form 18 that plaintiff filed on or about January 22, 2003, plaintiff stated she "couldn't get up out of a conference room chair during a meeting with prospective McDonald's tenant. My position required me to work on my feet, walking on concrete 8+ hours per day, 5-7 days a week." Further, plaintiff told her chiropractor that she began experiencing pain after working overtime several days in a row.
13. Plaintiff's November 30, 2004 responses to defendants' interrogatories contain the first mention of the ladder-carrying as being a possible cause for plaintiff's back pain.
14. While plaintiff proved that she carried a ladder on September 5, 2002, the fact that she did not relate the ladder-carrying as a possible cause of her back pain until over two years after her back pain arose, despite being a well-educated, articulate person and having been asked numerous times to describe the circumstances that led to her development of back pain, tends to indicate that she herself did not believe that she had suffered any specific traumatic incident until long after the onset of her back pain.
15. Plaintiff did not know what caused her back pain, and never thought the ladder-carrying had any bearing on it, either at the time her back pain arose or for a lengthy period of time, almost two years, thereafter. To the extent that plaintiff now claims that the ladder-carrying constituted a specific traumatic incident, such a claim is not credible.
16. Dr. Fera, a practicing physician since 1987, testified that he thought it was "very possible" or "very likely" that the ladder-carrying aggravated a pre-existing low back condition that plaintiff had.
17. Dr. Allen, a board-certified neurosurgeon since 1989, confirmed that plaintiff related a history of an atraumatic onset of back pain, and he testified that it was "possible" that the ladder-carrying caused plaintiff's back injury.
18. Dr. Nelson, a board-certified orthopedic surgeon since 1992, was unable to testify that, more likely than not, the ladder-carrying caused plaintiff's back injury.
19. The greater weight of the expert medical testimony does not establish that plaintiff's back injury was caused by her carrying a ladder on September 5, 2005.
20. On or about November 4, 2002, a Form 19, dated September 10, 2002 and stating that the employer-defendant first knew of plaintiff's alleged injury on September 9, 2002, was received as filed with the Commission. On or about December 19, 2002, a Form 61 Denial of Claim, dated November 4, 2002, was received as filed with the Commission. Defendants paid some of plaintiff's medical expenses.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has not proven that she suffered a specific traumatic incident, as required by N.C. Gen. Stat. § 97-2(6) in order for a claim to be compensable.
2. Complicated medical issues are involved in this case. Thus, plaintiff must present expert medical testimony to establish a causal connection between a specific traumatic incident and her injury.Young v. Hickory Business Furniture, 353 N.C. 227, 230, 538 S.E.2d 912,915 (2000) (quoting Click v. Pilot Freight Carriers, Inc., 300 N.C. 164,265 S.E.2d 389 (1980). Even if plaintiff were found to have suffered a specific traumatic incident, the greater weight of the expert medical testimony does not establish that the specific traumatic incident posited by plaintiff, to wit: her carrying of a ladder, caused plaintiff's back injury.
3. The undersigned has evaluated all of the competent evidence of record and finds that plaintiff has not met her burden of proving that she sustained a compensable injury by accident, specific traumatic incident or occupational disease. N.C. Gen. Stat. § 97-2(6)
4. Neither the imposition of a monetary fine nor the striking of defendants' defense of this claim for defendants' failure to file a Form 63, as requested of the Deputy Commissioner by plaintiff, appears to be appropriate in this case. Industrial Commission Rule 802(2).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for indemnity compensation under N.C. Gen. Stat. § 97-30 must, under the law, be and is hereby DENIED.
2. Plaintiff's claim for medical compensation under N.C. Gen. Stat. § 97-25 et seq. must, under the law, be and is hereby DENIED.
3. Plaintiff's claim for compensation for permanent partial disability under N.C Gen. Stat. § 97-31 must, under the law, be and is hereby DENIED.
4. Each side shall pay its own costs.
This the 16th day of November, 2006.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER